UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA JOHNSON,

       Plaintiff,                                CASE NO. 05-71937

-vs-                                          PAUL D. BORMAN
                                                UNITED STATES DISTRICT JUDGE

DOROTHY FLOWERS, as an
individual in her capacity as a
manager with the State of Michigan
Family Independence Agency, and
ANGIE JENERETTE, as an individual
and in the capacity as Director of the
Monroe office of the State of Michigan,
Family Independence Agency,

       Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now before the Court is Defendants' Dorothy Flowers ("Flowers") and Angie Jenerette ("Jenerette") (collectively "Defendants") Motion for Summary Judgment.

**BACKGROUND:**

Plaintiff Pamela Johnson ("Plaintiff"), is an African-American woman who was employed by the Department of Human Services ("DHS"), formerly known as the Family Independence Agency ("the FIA"),[1] an agency of the State of Michigan. (Compl.1, *Flowers v. DHS*, Case No. 05-73984). From 1997 until 2003, Plaintiff was assigned to the Monroe FIA

---

[1] The Court will refer to the agency as the FIA to reflect the nomenclature used in both parties's briefs.

office as a Program Manager. (Compl. ¶ 7). Defendants Flowers and Jenerette, both African American females, were Plaintiff's supervisors. (Defs.' Br. 3).

Plaintiff believes that Defendants created a hostile and discriminatory work environment targeted at white employees while giving black employees preferential treatment. (*See* Compl. ¶ 10). When Plaintiff challenged Defendants' alleged discriminatory policies, Plaintiff states that she was harassed by and suffered retaliation on the part of Defendants. (Pl.'s Resp. 1; Compl. ¶ 11).

Plaintiff claims that because she refused to acquiesce to Defendants' racist policies, Defendants demoted her from her management position and transferred her to a position in Ann Arbor and subsequently to Lansing, knowing that Plaintiff resided in Toledo, Ohio and "would have significantly increased drive time each day." (Compl. ¶ 21.). Plaintiff claims this retaliatory transfer was made despite the availability of a similar position in the Monroe office. (*Id.* ¶ 22.).

On July 31, 2003, Plaintiff filed a union grievance challenging her demotion and transfer. (Defs.' Br. Ex. 11). On October 15, 2003, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights ("MDCR") stating that she believed she was demoted "based on race and sex." (Defs.' Br. Ex. 1).

On February 23, 2004, Plaintiff reached a settlement agreement with the FIA concerning her grievance (hereinafter "the Release"), which stated in pertinent part:

> The following constitutes a complete, final, and binding agreement and resolves this grievance between the Grievant and the Michigan Family Independence Agency, and its agents relative to this matter.

1.  The agency agrees to rescind Ms. Johnson's disciplinary demotion of August 4, 2003 and return her to her former classification as a Social Services Programmer 14.

2.  Any record of the demotion will be purged from Ms. Johnson's employment history and personnel file.

3.  Ms. Johnson will be reassigned to Oakland County and the FIA Peer Review Team as a Social Services Programmer 14 effective March 8, 2004.

4.  Ms. Johnson will be made whole for wages from August 4, 2003 through March 8, 2004.

5.  Ms. Johnson releases the FIA in connection with any and all claims that she may have against any of the foregoing, including but not limited to grievances, appeals, lawsuits, claims, arising under the state and federal civil rights act, including the Elliott-Larsen Civil Rights Act, claims for personal injury, pain and suffering, or any other claim that she currently has.

6.  This settlement constitutes full and complete resolution to this issue and all complaints and demands relative to this matter that the union may have against the department or its agents, and is non-precedent setting.

(Defs.' Br. Ex. 3).

In April of 2004, Plaintiff states that a representative from the Office of Labor Relations informed a hearing officer that Plaintiff had been disciplined and demoted. (Compl. ¶ 17). On July 1, 2004, the FIA transferred the Peer Review Team staff to the Office of Children's Services and renamed it the Child Welfare Quality Assurance Unit. (*Id.* ¶ 20). Plaintiff states that she suffered several adverse employment actions as a result of this transfer, including loss of income, an increased daily commute, and loss of a state vehicle. (*Id.* ¶ 21). Plaintiff requested that she be reassigned to Monroe, Lenawee or Washtenaw County, but was informed via email that there were no available positions in those counties. (*Id.* ¶¶ 22-23). On August 11, 2004, Plaintiff requested a level 15 position in Washtenaw County but did not hear any response. (*Id.* ¶¶ 24-

25). In late August 2004, Plaintiff was transferred to the FIA Adrian office in Lenawee County where she states that she had no phone and was given very little work to do. (*Id.* ¶¶ 26-27). On September 10, 2004, the EEOC notified Plaintiff that it was closing its file on Plaintiff's charge of discrimination because it had accepted the findings of the local fair employment practices agency (here, the MDCR) which dismissed Plaintiff's claim. (Defs.' Br. Ex. 2; Pl.'s Resp. 9).

On October 28, 2004, Plaintiff had a meeting with two FIA officials in which she questioned the effectiveness of the EEOC due to a lack of consistency. (Compl. ¶¶ 28-29).

In December of 2004, Plaintiff interviewed for Director of the Monroe FIA office but did not receive the promotion. (*Id.* ¶¶ 31-32). On September 26, 2005, Plaintiff was transferred again to the Jackson County DHS. (*Id.* ¶ 36).

The instant claim was filed in the 38th Circuit Court for the County of Monroe in January 2005, alleging a violation of Plaintiff's First Amendment rights, retaliation under 42 U.S.C. § 1983, retaliation under 42 US.C. § 1981, and retaliation under Michigan's Elliott-Larsen Civil Rights Act.[2] Defendants filed their notice of removal to this Court on May 17, 2005.

## ANALYSIS

### A.      Standard of Review

The Court reviews Defendants' Motion for Summary Judgment under Federal Rule of Civil Procedure 56. Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof."

---

[2] Plaintiff filed a companion case naming DHS as a Defendant on October 17, 2005, which is currently pending in front of this Court. (*See Flowers v. DHS*, Case No. 05-73984).

Fed. R. Civ. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial.  *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).  In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary

judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.      Scope of the Release**

Defendants argue that Plaintiff's claims are barred by the Settlement Agreement and Release that she signed absolving the FIA and its agents of any and all liability in connection with her filed grievance. Plaintiff counters that while other portions of the Release refer to the FIA's agents, Plaintiff specifically declined to include the term "and its agents" in Paragraph 5, which states that Plaintiff is releasing the FIA in connection with any and all claims she might have. The Sixth Circuit has stated, concerning the interpretation of a negotiated release:

> The scope of a release, like any contract, depends on ascertaining the intent of the parties at the time of signing the release. The dispositive inquiry is "what did the parties intend?" Intent is determined by reviewing the language of the entire instrument and all surrounding facts and circumstances under which the parties acted in light of the applicable law as to employment discrimination at the time. It is necessary to examine all the circumstances surrounding the formation of the release.

*Adams v. Philip Morris, Inc.*, 67 F.3d 580, 585 (6th Cir. 1995). Additionally, Michigan courts have advised that:

> If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release. A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. The fact that the parties dispute the meaning of a

release does not, in itself, establish an ambiguity.

*Cole v. Ladbroke Racing Mich. Inc.*, 241 Mich. App. 1, 13 (2000).

The contract at issue is not ambiguous because the overarching initial paragraph of the Release encompasses all of the parties.  This paragraph, which is followed by lesser subparagraphs, states that the Release was intended to be a "complete, final, and binding agreement" that would fully resolve the grievance between Plaintiff, the FIA, and its agents. This is not ambiguous.

Further, although Paragraph 5 does not include the phrase "and its agents," it does state that Plaintiff "releases the FIA in connection with any and all claims that she may have against *any of the foregoing*. . . ."  The "foregoing" reference would be to those entities mentioned in the opening paragraph of the Release, including agents of the FIA.  Further, Paragraph 5 is merely a subparagraph under the overarching initial paragraph that covered agents of the FIA.  Any other result would render the first paragraph of the Release meaningless.

Finally, the fact that Paragraph 6 of the Settlement Agreement states that it applies between the union, and the FIA and its agents, does not undermine the previous reasoning in this Court's examination of the contract, since the union is not covered in the initial overarching paragraph of the Settlement Agreement which is only between Plaintiff and the FIA and its agents.

Defendants also aver that Plaintiff's claim that Defendants are not covered by the Release is inconsistent with Michigan jurisprudence.  Defendants argue that if Plaintiff had proceeded through arbitration, the defensive use of collateral estoppel would have been available to Defendants even though mutuality may have been lacking.  The Court finds this argument

irrelevant because there was no prior litigation - precluding a finding of collateral estoppel.[3]

### C.      Failure to Comply with the "Tender Back" Doctrine

The Michigan Supreme Court has said that "in all cases where a legal claim is raised in contravention of an agreement, [a plaintiff is required to] tender the consideration recited in the agreement prior to or simultaneously with the filing of suit."  *Stefanac v. Cranbrook Educ. Cmty*, 435 Mich. 155, 176 (1990).  Thus, if the Court should find that Plaintiff's claims is in contravention of the Release, then she would be required to 'tender back" the consideration she received from the FIA or risk having her claims barred by this Court.

Even if Plaintiff had an obligation to tender back the consideration she received to the FIA, that obligation would not extend to the FIA's agents, because the contract was not entered into with those individuals and Plaintiff's instant claim does not list the FIA as a party. Moreover, Plaintiff is not challenging the validity of the Release itself.  Instead, her claim is that the Release is valid but that it does not bar her from bringing suit against these Defendants who were not covered by the Release.

Viewing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff was

---

[3] The elements of collateral estoppel are:

> 1) whether "the issue in the subsequent litigation is identical to that resolved in the earlier litigation," 2) whether "the issue was actually litigated and decided in the prior action" 3) whether "the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation," 4) whether "the party to be estopped was a party to the prior litigation (or in privity with such a party)," and 5) whether "the party to be estopped had a full and fair opportunity to litigate the issue.

*Hammer v. I.N.S.*, 195 F.3d 836, 840 (6th Cir. 1999).

not under any obligation to tender back the received consideration prior to filing this lawsuit.

**D.     Equitable Estoppel**

Defendants allege that Plaintiff should be equitably estopped from bringing the instant claim.  The elements of equitable estoppel are:

> (1) conduct or language amounting to a representation of fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on such that the party asserting the estoppel has the right to believe it was so intended; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must detrimentally and justifiably rely on the representation.

*Brown-Graves Co. v. Central States, Southeast & Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000).  "[E]quitable estoppel serves to protect litigants from unscrupulous opponents who induce a litigant's reliance on a position, then reverse themselves to argue that they win under the opposite scenario."  *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1220 (6th Cir. 1990).

Plaintiff concedes that the first three elements of equitable estoppel have been met.  She disputes that Defendants were unaware of the true facts and that they detrimentally and justifiably relied on her representations.

Plaintiff stated in her EEOC/MDCR Complaint that she was demoted based on race and sex, but now takes a different tack and argues that she was demoted because she supported other white co-workers who had been discriminated against by Defendants.  Plaintiff argues that the "Summary of Investigation," (Pl.'s Resp. Ex. J), put Defendants on notice of the "true facts," which are that Plaintiff violated work rules and was demoted as a result.  However, in Defendants' view, the "true facts" are Plaintiff's knowledge that she believed she was demoted because of her support for her white co-workers.  Defendants state that they were unaware of this

information until Plaintiff filed her court Complaint.

Defendants further state that they relied to their detriment on Plaintiff's representation that she was filing suit based upon demotion due to her race and sex. Plaintiff counters that Defendants have failed to prove that they relied on the statements in the EEOC/MDCR Complaint, much less that they detrimentally and justifiably relied on them.

The Court finds that Defendants were indeed unaware of the "true facts" behind Plaintiff's claim. Therefore, equitable estoppel is warranted. Defendants relied on the assumption that Plaintiff would advance only race and sex discrimination as the basis for the eventual lawsuit. As the United States District Court of Appeals for the Sixth Circuit noted in *Teledyne*:

> [E]quitable estoppel serves to protect *litigants* from unscrupulous opponents who induce a litigant's reliance on a position, then reverse themselves to argue that they win under the opposite scenario.

911 F.2d at 1220 (emphasis in original).

Accordingly, Plaintiff's claims are barred by the doctrine of equitable estoppel.

**E.      Judicial Estoppel**

"In order to invoke judicial estoppel, a party must show that the opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court." *Teledyne*, 911 F.2d at 1218. Here, Plaintiff alleged in her EEOC/MDCR Complaint that she felt she had been demoted based on race and sex. She stated that she believed she was subjected to a higher scrutiny and treated differently than a white male program manager. In the instant Complaint, Plaintiff stated that she was demoted because of her support for white co-workers who believed they had been subject to discrimination. Because Plaintiff's EEOC/MDCR

Complaint alleged facts different from her court Complaint, the Court finds that these averments are inconsistent and thus barred by the doctrine of judicial estoppel.

**CONCLUSION**

Because the Court finds (1) the Release covers Defendants Flowers and Jenerette, and (2) Plaintiff's claim is barred by the doctrines of (a) judicial estoppel and (b) equitable estoppel, the Court GRANTS Defendants' Motion for Summary Judgment.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 27, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 27, 2006.

s/Jonie Parker
Case Manager